UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO


DONALD CAMERON DeLAND,      )      CASE NO.  4:06 CV 2150
     )
        Petitioner,      )      JUDGE SOLOMON OLIVER, JR.
     )
      v.      )
     )      <u>MEMORANDUM OF OPINION</u>
     )       <u>AND ORDER</u>
ATTORNEY GENERAL OF UNITED      )
    STATES OF AMERICA, <u>et</u> <u>al.</u>,      )
     )
        Respondents.      )


On September 7, 2006, <u>pro</u> <u>se</u> petitioner Donald Cameron DeLand filed the above-captioned petition for writ of habeas corpus pursuant to "28 U.S.C. § 2244."[1] Mr. DeLand, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), brings this action against the Attorney General of the United States, the United States of America, the Federal Bureau of Prisons (BOP) and F.C.I. Elkton Warden T. R. Sniezek.  Petitioner asserts that the BOP policy of limiting a prisoner's placement in a Community Corrections Center (C.C.C.) to six months or ten (10%) percent of a prisoner's sentence, whichever is less, violates 18 U.S.C. §§ 3621(b) and

---

[1]      Considering the nature and content of Mr. DeLand's petition, the court presumes the petition for writ of habeas corpus is filed pursuant to 28 U.S.C. § 2241.

3624(c).  He claims that although he is eligible for placement in a C.C.C. on November 11, 2006,

the BOP has not offered him the opportunity for C.C.C. placement.

*Background*

Mr. DeLand states that he was sentenced to 24 months in prison on June 14, 2005 for

an undisclosed crime.  Based on the term of imprisonment, he claims that his scheduled release date

is May 11, 2007.

As the term of his imprisonment is nearing completion, Mr. DeLand learned that the

BOP was not "offering" him placement in a C.C.C.  He asserts that he is eligible for C.C.C.

placement on November 11, 2006, however, because that date marks a full sixth months before his

scheduled release date.

In support of his assertions, Mr. DeLand claims that it was BOP policy to "routinely

placed prisoners in a C.C.C. for the last six (6) months of thier [sic] custodial sentence, regardless

of whether six (6) months exceeded the Ten Percent (10%) of the total sentence or not," before

December 2002.  (Pet. at 1.)  He claims that the new BOP policy, which limits placement to the last

10% of an offenders's sentence, is "invalid."

*Analysis*

Mr. DeLand claims that the BOP's new C.C.C. placement policy violates the

Administrative Procedures Act (APA), is based on an erroneous interpretation of the statute, and

violates the Ex Post Facto and Due Process Clauses.  He maintains that both the First and Eighth

Circuit Courts of Appeal invalidated the very same policy change in Golding v. Winn, 383 F.3d 17

(1st Cir. 2004) and Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004).  He argues further that 18 U.S.C.

§ 3624 only places a limitation on the BOP's obligation to assure that each prisoner spend the latter

2

portion of his or her sentence in a pre-release environment.  Petitioner does not believe that this precludes the BOP from exercising its discretion by placing a him in a C.C.C. at an earlier stage in his sentence.

*28 U.S.C. § 2241*

Courts have uniformly held that claims asserted by federal prisoners seeking to challenge their convictions or imposition of their sentence shall be filed in the sentencing court under 28 U.S.C. § 2255, see Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996); Cabrera v. United States, 972 F.2d 23, 25-26 (2d Cir.1992); Cohen v. United States, 593 F.2d 766, 770 (6th Cir.1979), and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir. 1977). The remedy afforded under § 2241 is not an additional, alternative or supplemental remedy to that prescribed under § 2255. See Bradshaw, 86 F.3d at 166.

Mr. DeLand does not presently attack his conviction, but the manner in which the BOP is executing his sentence.  Therefore, his challenge to the BOP's calculation of sentence credit is appropriately addressed in a §2241 petition.  The court will now address his claims that the BOP's new C.C.C. placement policy violates the APA, is based on an erroneous interpretation of the statute, and violates the Ex Post Facto and Due Process Clauses.

*18 U.S.C. §3624(c)*
*"OLC Memo"*

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum regarding the BOP's policy of interpreting 18 U.S.C. § 3624 to provide that federal inmates be designated in C.C.C.'s for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences. <u>Op. Off. Legal Counsel</u>, slip. op., 2002 WL 31940146 (Dec. 13, 2002) ("the OLC Memo.")  This policy provided, in part, that 18 U.S.C. § 3621(b) did not give the BOP general authority to place an offender in community confinement from the outset of his sentence or to transfer the offender from prison to community confinement at any time the BOP chose during the course of the offender's sentence.  Instead, under the new interpretation of § 3621(b),offenders were only eligible for confinement in C.C.C.s for the lesser of (i) ten percent of their sentence or (ii) six months--periods specifically authorized by 18 U.S.C. § 3624(c). The OLC Memo declared that the Six Month Policy was "unlawful."

Within days after the OLC Memo was issued, a memorandum written by Deputy Attorney General Larry Thompson instructed the BOP to transfer all offenders residing in C.C.C.s with more than 150 days remaining on their sentence to a traditional prison facility because the use of C.C.C.s was "unlawful."  (Mem. of Deputy Attorney General Larry D. Thompson, December 16, 2002, at 1) ("Thompson Memo".)   The Director of the BOP issued a memorandum on December 20, 2000 entitled "Community Confinement Procedure Changes" to all federal judges stating that the BOP would no longer honor judicial recommendations placing inmates in C.C.C.s for the imprisonment portions of their sentences. <u>See</u> (Mem. of BOP Director Kathleen Hawk Sawyer, Dec. 20, 2002, at 1)("the December 20, 2002 Memorandum.")  Consistent with the change effected in the December 20, 2002 Memorandum, pre-release into C.C.C. designations became limited to the last

4

10 percent of a prisoner's sentence, not to exceed six months ("the 10% Rule").  It is this 10% Rule that Mr. DeLand claims is in violation of the APA and the Ex Post Facto Clause.

**A.  Ex Post Facto Clause**

As a general rule, laws, policies, and other actions violate the Ex Post Facto Clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. Garner v. Jones, 529 U.S. 244, 249-50 (2000).  The Ex Post Facto Clause is implicated where a law punishes retrospectively: "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" Miller v. Florida, 482 U.S. 423, 430 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 31 (1981)).

The court takes judicial notice of the fact that Mr. DeLand was sentenced on June 14, 2005, over three years after the OLC Memo was issued.  Considering the fact that his twenty four month sentence was handed down in 2005, and the OLC Memo had already been in effect for at least three years, he has failed to raise a valid Ex Post Facto claim.

**B.  Administrative Procedures Act (APA)**

Mr. DeLand's claim that the BOP's new policy violates the APA fails as a matter of law.  Although he does not elaborate on what provision of the APA the new policy violates, similar APA challenges by prisoners have been based on the BOP's failure to adhere to the "notice and comment" provisions which require the publication of any "proposed rule making." See 5 U.S.C. 553(b).[2]    The rulemaking requirements of § 553 of the APA do not, however, apply to

---

[2]        Under section 553 of the APA, it is mandated that: "General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law." 5 U.S.C. § 553(b).

5

"interpretative rules." 5 U.S.C. § 553(a). Therefore, the relevant question is whether the BOP's December 2002 decree constituted the kind of rule that is subject to APA constraints.

The Sixth Circuit has held that it is not. See Dismas Charities, Inc. v. United States, 401 F.3d 666 (6th Cir. 2005). Noting that there is no general requirement that agency policies require notice and comment, see United States v. Cinemark, 348 F.3d 569, 580-81 (6th Cir.2003), but instead applies only to rules, the Dismas court identified the Thompson and Sawyer memos as "BOP rules." See 5 U.S.C. § 551(4) (" 'rule' means the whole or a part of an agency statement ..."). It was the opinion of the Dismas court that the change in BOP policy regarding placement of federal offenders in C.C.C.s,  based on a legal interpretation that the statute limited BOP's authority, was an "interpretive rule" and, as such, not subject to notice and comment rulemaking under the APA. Dismas, 401 F.3d at 680.

**C.  Due Process Clause**

A district court has no authority to direct where a federal prisoner will be confined or whether he will be allowed to serve part of his term in a C.C.C.. See 18 U.S.C. § 3621.[3]  Instead it is the Attorney General of the United States who has delegated those discretionary decisions to the Director of the BOP. Congress has given federal prison officials full discretion to control the conditions of confinement, and prisoners have no constitutional entitlement to invoke due process claims. Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); see e.g. Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert. denied, 429 U.S. 846 (1976) (inmates have neither protected liberty interests

---

[3]      The statute provides, in relevant part: "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . .,".  18 U.S.C. § 3621 (emphasis added).

nor property interests in custodial classification). As the Supreme Court stated in <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250 (1983), "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. [And] . . . an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." <u>Id</u>. at 250 n. 12.

There is no liberty interest in being placed in a community residential program. <u>Id.</u> at 245; <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976). "To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life,'" <u>see</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995), or that the government's actions "will inevitably affect the duration of his sentence." <u>Id</u>. The petitioner has failed to demonstrate to this court if or how his delayed transfer to a C.C.C. would result in an "atypical and significant hardship" as required by <u>Sandin</u>. The court, therefore, is unable to grant the relief requested given the BOP's broad, virtually unfettered discretion to determine the placement of prisoners.

## D.  Erroneous Interpretation of the Statute

With regard to Mr. DeLand's claim that the BOP has misconstrued Congress's intent this court cannot address that issue on the merits. Although petitioner's other claims were subject to dismissal on their face, his claim regarding the BOP's interpretation of § 3624(c) must first be presented to the Bureau. Here, the problem is that there is no suggestion that Mr. DeLand pursued the matter administratively. Without any evidence that he addressed this issue through the administrative process his petition is unsupported. Before filing a habeas corpus petition under 28 U.S.C. § 2241 federal prisoners are required to exhaust their administrative remedies. <u>United States</u>

7

v. Wilson, 503 U.S. 329, 335 (1992); United States v. Cobleigh, 75 F.3d 242, 251 (6th Cir.1996);

Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981). This requirement is not mandated by the

Prison Litigation Reform Act, but is wholly judge-made. Wesley v. Lamanna, No. 01-3426, 27 Fed.

Appx. 438, 438-39 (6th Cir. Oct. 30, 2001).

   The administrative remedies a federal prisoners must pursue are set forth at 28 C.F.R.

§§ 542.10-16 (2005).  As noted above, Mr. DeLand does not indicate that he commenced the

grievance process or that it is futile to do so.  Because he has failed to acknowledge or allege that

he has done so, his petition is prematurely filed and must be dismissed without prejudice. Ginn v.

Dewalt, No. Civ.A. 06-CV-242KSF, 2006 WL 2228969, at *2 (E.D.Ky. Aug. 3, 2006).  Should

petitioner seek expedited consideration of his administrative grievance, 28 C.F.R. § 542.18 provides

a mechanism to obtain it.

   Based on the foregoing, petitioner's claims pursuant to the APA, as well as the Ex

Post Facto and Due Process Clauses are denied and this action is dismissed without prejudice for

failure to exhaust administrative remedies regarding the BOP's interpretation of 18 U.S.C. § 3624.

The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not

be taken in good faith.

   IT IS SO ORDERED.

        /s/_SOLOMON OLIVER, JR._____
        UNITED STATES DISTRICT JUDGE

8